# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STANLEY SZUMERA and SHARON SZUMERA,<br><br>    Plaintiffs,<br><br>    v.<br><br>ILYA MARDER, *et al.*,<br><br>    Defendants. | NO. 3:19-CV-00055<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before me is a Motion to Dismiss for Lack of Jurisdiction filed by Defendants Ilya Marder, Zoya Marder, and Eltech Capital, LLC[1] ("Defendants"). (Doc. 10). Defendants move to dismiss the complaint on the ground that diversity jurisdiction does not exist—Ilya and Zoya Marder are Pennsylvania citizens like Plaintiffs Stanley and Sharon Szumera, Defendants argue. (*See* Doc. 10-2). The Szumeras respond that the evidence—a water bill, in particular—shows otherwise. I agree with the Szumeras; I find by a preponderance of the evidence that the Marders are citizens of New York. Thus, diversity of citizenship (and diversity jurisdiction) exists, and Defendants' Motion to Dismiss will be denied.

## I. Background

Ilya and Zoya Marder (Mr. and Mrs. Marder, respectively) rent out homes they own in Pike County, Pennsylvania, through their company, Eltech Capital, LLC. (*See* Doc. 1 at ¶¶ 8-16). The Szumeras rented one of these homes. (*Id.* ¶ 17). The front steps of the home were in poor condition, and on January 12, 2018, the steps collapsed as Stanley Szumera was walking on them. (*Id.* ¶¶ 18-19). So the Szumeras filed suit on January 10, 2019, alleging six state law causes of action. (*See id.* at 7-16).

Defendants responded with a motion to dismiss, contending that this Court lacks diversity jurisdiction because both the Szumeras and the Marders are Pennsylvania citizens.

---

[1]     Defendants concede that Eltech Capital, LLC's citizenship is dependent on Ilya Marder's citizenship, (Doc. 14 at 4, 6), so I will treat them as one and the same.

(Doc. 5). (Under diversity jurisdiction, "no plaintiff [may] be a citizen of the same state as any defendant," *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).) Defendants argued that the Marders are citizens of Pennsylvania because they moved to a property in Dingmans Ferry, Pennsylvania in 2012, and consider it their permanent home. (*See* Doc. 5). Seeing as Defendants were raising a factual attack to the Szumeras' jurisdictional allegations, which state Defendants are New York citizens, I denied the motion to dismiss and allowed the parties to conduct jurisdictional discovery. (*See* Doc. 9).

At the close of jurisdictional discovery, Defendants filed the instant Motion, reiterating their earlier arguments and providing evidence of Pennsylvania citizenship: a declaration, a car registration, a driver's license, an insurance policy, tax returns, mail, and bills. (*See* Doc. 10; Doc. 10-4). The Szumeras responded, albeit six days late under Local Rule 7.6, with the evidence they gathered during discovery: interrogatories, business records, and a water bill, among other things. (*See* Doc. 11). This evidence, the Szumeras maintain, shows the Marders are New York citizens, living in Brooklyn, who visit their Dingmans Ferry property seasonally. (*See id.*). The Motion has been fully briefed and is now ripe for review.

## II. Legal Standard

For purposes of diversity jurisdiction, a natural person is deemed a citizen of the state in which he is domiciled. *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008). Mere residency is not domicile. *See Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972). To be domiciled in a state, a person must reside there and intend to remain indefinitely. *Id.* at 1300-01. A person may only have one domicile, and thus may be a citizen of only one state for diversity jurisdiction purposes. *See Williamson v. Osenton*, 232 U.S. 619, 625 (1914).

The party claiming diversity of citizenship exists has the burden of proving it by a preponderance of the evidence. *Krasnov*, 465 F.2d at 1301. "In determining an individual's domicile, a court considers several factors, including 'declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business.'" *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) (quoting *Krasnov*, 465 F.2d at 1301).

"Other factors to be considered may include location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration." *Id.* (citation omitted).

One more thing bears mentioning: while "an individual's domicile changes instantly if he 'takes up residence at the new domicile' and 'intend[s] to remain there[,]'" *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011) (quoting *Krasnov*, 465 F.2d at 1300), once a domicile is acquired it is "presumed to continue until it is shown to have been changed." *Id.* (quotation omitted). This presumption of continuing domicile may be rebutted, but it does impose a "heavier burden" of production on the party seeking to rebut it. *See id.* (quotation omitted).

### III. Discussion

The "gravamen" of the Motion to Dismiss, Defendants argue, is that Mr. Marder is a Pennsylvania citizen. (Doc. 14 at 5). So I will cut to the chase: the preponderance of the evidence shows that Mr. Marder is a New York citizen. Yes, Mr. Marder registered a car in Pennsylvania, has a Pennsylvania driver's license, receives some mail there, and files his taxes from there. (*See* Doc. 14 at 5). (He also declared he lives in Pennsylvania—more on that later.) But everything else points to New York: (1) Mrs. Marder and their children live, work, and attend school in New York "[d]uring the school time," *i.e.*, nine months of the year (Doc. 11-9 at 4); (2) the Marder family is living with Mr. Marder's parents in Brooklyn while their own Brooklyn property, currently "merely being used as a mailing address," is under construction (*id.* at 3-4); (3) Mr. and Mrs. Marder have cell phone numbers with New York area codes (*id.* at 4); (4) Mr. Marder's business, Eltech Capital, maintains a Brooklyn address (Doc. 11-2 at 3); and (5) the water bill from the Dingmans Ferry property reflects significant water usage during the summer months, with no water usage at all during October and December of 2018, and January and May of 2019. (Doc. 11-7 at 4). (The water bill reflects similarly seasonal usage between February of 2017 and February of 2018—less than 500 gallons of water (a day or two's worth) were consumed in each of the non-summer months, (Doc. 10-21 at 14).)

3

I find it more likely than not that the Marders are domiciled in New York, as it is both where the they live most of the year, and where they return after spending time elsewhere. *See Berger v. Berger*, 210 F.2d 403, 405 (3d Cir. 1954) ("[A]n individual is domiciled where he maintains a fixed home to which, whenever he is absent, he has the intention of returning."). That makes the Marders New York citizens, and their Dingmans Ferry property a vacation home they use for recreational, car registration and insurance, and tax-filing purposes. *See Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991) (Posner, J.) (defendant who registered to vote in Florida, had a Florida driver's license, and listed Florida as his permanent residence for tax purposes was still an Illinois citizen; the defendant's actions, which projected an "aura of fraud," could not negate his intent to "spend most of the year in [Illinois]" and holding otherwise would permit litigants with vacation homes to "change domicile continually . . . in order to take advantage of changes in tax law or to [manipulate] federal diversity jurisdiction"); *Hicks v. Brophy*, 839 F. Supp. 948, 952 (D. Conn. 1993) (even though the plaintiffs had, *inter alia*, a vacation home in Connecticut, a Connecticut driver's license, a car registered there, and a bank account there, the plaintiffs were New York citizens because the evidence showed they lived, worked, ate, and slept "primarily in New York"). And the Szumeras have met their burdens of production and persuasion despite any presumption of continuing domicile (which they say applies here (*see* Doc. 11 at 9, 11) even though there is no evidence to suggest the Marders were previously Pennsylvania citizens).

But what about Mr. Marder's declaration? Mr. Marder declared that at the time this suit was filed in January of 2019, he "was working fulltime in Pennsylvania" and was living at the Dingmans Ferry property. (Doc. 10-7 at ¶¶ 2, 11). If this were true, it might have made Mr. Marder's citizenship a closer question—after all, a party can instantly change his domicile simply by taking up residence and intending to remain elsewhere. *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972). But it is not true. The water bill, as the Szumeras point out, shows the Dingmans Ferry property was uninhabited from December of 2018 through January of 2019. (Doc. 11-7 at 4). Mr. Marder was not, therefore, residing where he declared he was. So I will not credit that part of his declaration. *See Korn v. Korn*, 398 F.2d 689, 691

4

& n.4 (3d Cir. 1968) (a self-serving declaration cannot establish domicile "when it is contradicted or negatived by an inconsistent course of conduct" or where "the surrounding facts and circumstances clearly indicate" the declaration is fabricated (quotation omitted)). Nor will I credit any other part of his declaration. If Mr. Marder lied about where he lives, there is no reason to believe his claim of intent to remain in Pennsylvania. *See The Santissima Trinidad*, 20 U.S. 283, 339 (1822) (Story, J.) ("[W]here the party speaks to a fact in respect to which he cannot be presumed liable to mistake, as in . . . living in a particular place, if the fact turn out otherwise, it is extremely difficult to exempt him from the charge of deliberate falsehood; and Courts of justice, under such circumstances, are bound, upon principles of law, and morality and justice, to apply the maxim *falsus in uno, falsus in omnibus*."). Whatever genuine intent to remain in Pennsylvania Mr. Marder holds is contradicted by the evidence of his and his family's conduct, anyway. *See Korn*, 398 F.2d at 691 & n.4.

That renders Defendants' argument about the Szumeras failing to "provide[] any declarations to counter Mr. Marder's [declaration]" academic. (Doc. 14 at 6). (Frankly, counsel's reliance on Mr. Marder's declaration—and for that matter, counsel's decision to challenge the Szumeras' jurisdictional allegations at all—is troubling.) In any event, declarations do not have to be met with counter-declarations. The Szumeras have presented other evidence showing the Marders are more likely than not New York citizens, rebutting Mr. Marder's declaration in the process. Accordingly, despite the "aura of fraud" surrounding the Marders' conduct, *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991), diversity jurisdiction exists and Defendants' Motion to Dismiss will be denied.

## IV. Conclusion

For the above stated reasons, Defendants' Motion to Dismiss will be denied.

An appropriate order follows.

July 31, 2019  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge

5